IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2000 Session

## LARRY NIEDERGESES, ET AL. v. GILES COUNTY, TENNESSEE

**Appeal from the Circuit Court for Giles County**
**No. 9862     Robert L. Holloway, Jr., Judge**

---

**No. M2000-00428-COA-R3-CV - Filed July 5, 2001**

---

This case presents a tragic set of facts involving an automobile accident which occurred in Giles County on May 8 or 9, 1997, sometime between 11:15 p.m. and 12:15 a.m. Michael Niedergeses died as a result of this accident. His parents, Larry Niedergeses and Roberta Niedergeses, instigated this suit against Giles County alleging that the county's negligence in failing to maintain the bridge signage caused their son's accident and resulting death. The case was tried non-jury in the Circuit Court of Giles County. That court found Mr. Niedergeses fifty percent at fault and Giles County fifty percent at fault. Plaintiffs appeal this ruling asserting that the trial judge was in error and should have found Giles County more than fifty percent at fault. The appeal presents for review the question of "whether the evidence preponderated against the trial court's finding that John Michael Niedergeses was fifty percent at fault in the May 9, 1997 accident." We find that the evidence does not preponderate against the judge's findings and affirm the trial court's ruling.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and WILLIAM C. KOCH, JR., J., joined.

David L. Allen, Lawrenceburg, Tennessee, for the appellants, Larry Niedergeses and Roberta Niedergeses, next of kin and parents of John Michael Niedergeses.

David J. Sneed, Brentwood, Tennessee, for the appellee, Giles County, Tennessee.

**OPINION**

As this case was tried non-jury, the appropriate standard of review was enunciated in the case of *Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn. 2000). The supreme court in *Cross* held that "when reviewing a trial court's findings of fact, an appellate court must apply the de novo standard of review contained in Tennessee Rule of Appellate Procedure 13(d)." *Id.* at 643. In making this ruling, the supreme court limited the clearly erroneous standard of review enunciated in *Wright v. City of Knoxville*, 898 S.W.2d 177 (Tenn. 1995), to jury cases.

At the time of the accident, Mr. Niedergeses was returning home from a date with a young lady he had been seeing for approximately one month. The testimony was that this was their seventh date and that for each of the previous six dates Mr. Niedergeses most likely took the same route he took on the night of his accident. This route was over an extremely narrow country road. The accident occurred when Mr. Niedergeses collided with the left bridge rail of the Hams Creek Bridge.

The evidence is undisputed that the night of the accident was extremely foggy. There was testimony that visibility was as little as one car length but no more than forty feet.

The evidence is further undisputed that the bridge which Mr. Niedergeses struck had not been properly maintained. The left paddle board, used to warn vehicles of the edge of the bridge, was missing, as was the narrow bridge sign which warned drivers in advance of this bridge. The edge of the bridge railing had also once been painted yellow, but only slight traces of this paint was left leaving the visible edge of the bridge rail a grayish brown color. Mr. Niedergeses impacted the left bridge railing, which contained no paddle board object marker. The evidence further showed that Mr. Niedergeses was traveling somewhere between 35 and 45 m.p.h. at the time of impact.

As there was no dispute that the bridge sign age was deficient and had been so for many years, the negligence of Giles County is undisputable. However, the principal question is whether this negligence was the cause of Mr. Niedergeses's accident and whether the evidence bears out Plaintiffs' assertions that Defendant was more than fifty percent at fault.

As Mr. Niedergeses was traveling alone and there were no witnesses to the accident, any determination of cause must be extrapolated from testimony of experts analyzing in retrospect the accident and of lay witnesses as to fog and visibility.

Plaintiffs' expert in mechanical engineering and accident reconstruction testified in great detail regarding the amount of damage to the vehicle in order to determine speed at impact. Based on amount of vehicle damage, he determined the speed at impact to be 35 m.p.h. or less. He, however, gave little testimony with regard to the actual cause of the accident.

On cross examination, Plaintiffs' expert admitted that there was no evidence that Mr. Niedergeses saw, or could see, the right paddle board, which was properly positioned over the right hand bridge railing. There was no evidence of any braking or hard steering which would indicate evasive actions to avoid the bridge or steer towards the right paddle board sign. Further, the road on which Mr. Niedergeses was driving and the bridge were both sixteen feet wide, and Mr. Niedergeses was twelve feet to the left of the paddle board on the right side of the bridge at the time of impact, well out of his lane of travel.

Plaintiffs' second expert, a civil engineer, testified regarding signs and markers on bridges. However, he admitted that he could not say whether or not the missing paddle board would have prevented the accident.

Defendant's expert, a civil engineer and accident reconstruction expert, testified to a probable speed of 40 to 45 m.p.h. based on the structural damage to the vehicle. Defendant's expert further testified that Mr. Niedergeses had failed to negotiate the curve prior to hitting the bridge and had been driving off the road on the wrong side of the road for some time. He felt that, even at 30 or 35 m.p.h., Mr. Niedergeses was traveling too fast for visibility, since at 30 m.p.h. perception reaction time would have been approximately 66 feet. With visibility at a maximum of 40 feet, any signage would have been irrelevant in preventing the accident, as Mr. Niedergeses would not have had time to react. He felt that the cause of the accident was Mr. Niedergeses' failure to see the curve soon enough to maintain the car in the road, causing him to run off the road just prior to striking the bridge.

After having the opportunity to listen to all the expert witnesses and their testimony in person, the trial judge found:

> There was very heavy fog. Mr. Niedergeses had driven about six (6) miles over curvy country road prior to the accident. He approached Hams Creek Bridge from the north. Hams Creek Road curves to the right approximately two (200) hundred feet from the bridge, then straightened for approximately forty (40) feet before entering the bridge. For some reason, almost certainly the heavy fog, Mr. Niedergeses failed to make the right hand turn in his lane and crossed the unmarked roadway to the left lane before negotiating the curve. The front left 12 to 14 inches of his vehicle struck the left concrete bridge abutment. The speed of the vehicle at the impact was estimated by the Plaintiffs' expert to be a maximum of 35 mph and by Defendant's expert to be in the range of from 35 - 45 mph.

> The Plaintiffs allege the accident to have been caused by the signage, or lack thereof, or lack of maintenance thereof, on and near the bridge. The bridge had three (3) reflective object markers located near the bridge abutments, two (2) on the opposite end of the bridge from which Mr. Niedergeses approached, and one (1) near the right hand bridge abutment from the direction of his approach. The left hand abutment was not marked with an object marker. There were traces of yellow paint on the left abutment, but the paint was barely visible and for all practical purposes the left hand bridge abutment was gray or grayish brown and unmarked. The south approach to the bridge was marked by a yellow "narrow bridge" warning sign located approximately two hundred (200) feet from the bridge. This sign, as shown by Exhibit 41, was in disrepair. The top screw was missing and the sign hung upside down and black paint or tar covered much of the sign's surface. There was no "narrow bridge" sign on the north approach.

>         . . .

> As Mr. Niedergeses approached the bridge, the first thing he would have seen, if he could have seen anything at all due to the fog, would have been the narrow bridge

sign. Again, there was no narrow bridge sign for him to see. Because the road turns to the right as you approach the bridge, it is logical that the object marker on the left bridge abutment would have been the object marker in the most direct line of his lights. This was the object marker that was missing from the bridge.

The fact remains, however, that Mr. Niedergeses failed to negotiate the right hand turn in his lane. In fact, based on Exhibits 15, 16 and 65, Mr. Niedergeses' car must have run off the roadway into the grass prior to striking the bridge. Mr. Niedergeses was also somewhat familiar with the roadway and had crossed Hams Creek Bridge several times recently.

The Court finds both the county and Mr. Niedergeses to be at fault. Giles County was at fault in failing to properly maintain the warning signs and object markers which at some point in the past the county decided were needed. Mr. Niedergeses was at fault in failing to maintain his vehicle under control in very foggy conditions. The Court assigns fifty percent (50%) of the fault to Giles County and fifty percent (50%) of the fault to John Michael Niedergeses.

The trial judge heard and saw the witnesses for both parties and made a credibility judgment which is his duty and his prerogative subject only to our review under a standard giving great weight to the trier of fact who had the opportunity to observe the manner and demeanor of witnesses while they testified. *Doe A. v. Coffee County Board of Education*, 925 S.W.2d 534 (Tenn. Ct. App. 1996).

We cannot find that the evidence preponderates against the findings of fact of the trial judge in this matter. Thus, we affirm the trial court, holding Mr. Niedergeses fifty percent at fault and Giles County fifty percent at fault.

Costs of appeal are assessed against appellants.

_____
WILLIAM B. CAIN, JUDGE

-4-